UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>**William Casey**</u>

     v.                                           Case No. 22-cv-252-PB
                                                    Opinion No. 2023 DNH 063

<u>**St. Mary's Bank**</u>

## MEMORANDUM AND ORDER

The plaintiff, William Casey, sued his former employer, St. Mary's Bank (SMB), for breach of contract based on SMB's alleged failure to abide by various policies in its employee manual. SMB moves to dismiss Casey's claims, arguing that the policies at issue do not give rise to a contract. I agree, and therefore dismiss Casey's breach of contract claims.

**I.**     **BACKGROUND**

Casey is a member of the Massachusetts National Guard who began working at SMB as a sales and service representative in December 2019. Doc. 1 at 2. That same month, Casey was provided with an "Employee Electronic Manual" (Manual). Doc. 8-1 at 10. The Manual included an acknowledgement form, signed by Casey, which stated:

> I understand that neither this Manual nor any other SMB policy or procedure is intended to provide any contractual obligations related to continued employment, compensation or employment contract . . . Since the information and policies described herein are subject to change at any time, I acknowledge that revisions to the manual may occur . . . My signature below indicates that I have read and agree to abide by the

1

electronic Employee Manual and any revisions, am bound by the provision contained within and am responsible for knowing and understanding its contents.

Id.; see also Doc. 9 at 3.

The Manual included various policies, two of which are relevant here. The "Anti-Discrimination and Harassment Prevention Policy" (EEO Policy) provides:

> It is the policy of St. Mary's Bank to promote a positive and productive work environment. St. Mary's Bank does not tolerate discrimination or harassment on the basis of race, religion, color, gender, age, marital status, national origin, sexual orientation, veteran status, disability, or any other protected status.

Doc. 9-1 at 2. The Manual also includes a "Military Policy," which contains two provisions concerning pay for employees on military-related leave. Doc. 9-2 at 2. The first provision (Training Provision) states:

> Regular employees serving in the Military Reserves or National Guard will be granted military leave to enable them to attend training as reservists or guard members. In this case, eligible employees will be paid the difference between their military pay and their regular straight-time pay for up to ten days of training leave each calendar year (assuming their military pay is less than their regular pay from the Credit Union).

Id. The second provision (Active Duty Provision) states:

> Regular employees who are military reservists or National Guard members and who are called to active duty, will be paid the difference between their military pay and their regular straight-time pay for up to 12 months (assuming that their military pay is less than their regular pay from the Credit Union).

Id.

2

About six months into his employment with SMB, Casey was called to active duty for a one-year period to respond to the then-emerging COVID-19 pandemic. Doc. 1 at 2-3. Following his return from active duty, Casey was required to attend periodic training with the Guard. Id. at 5. SMB did not pay Casey the difference between his military pay and regular pay while he was at training or on active duty. Id. at 8.

Moreover, towards the end of his tenure at SMB, Casey was subjected to unfavorable treatment because of his military service. For example, Casey's colleagues made "snide comments about his military service" and supervisors would "openly favor[] other employees when assigning loans[.]" Id. at 5. Additionally, Casey's supervisors did not prorate his sales goals to account for the time he was out on military leave, which negatively impacted his ability to obtain promotions and pay increases. Id. at 4-5. Finding the working conditions intolerable, Casey resigned in December 2021. Id. at 7.

Casey filed suit in this court, asserting three claims for breach of contract based on SMB's alleged failure to comply with the policies outlined in its Manual.[1] Id. at 12-14. Two of the claims are based on the Military

---

[1] Casey also asserted claims for various violations of the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4301 et seq., and constructive discharge. Doc. 1 at 8-12, 14. Those claims are not subject to the present motion.

Policy. Id. at 13-14. Casey claims that, by failing to pay him the difference between his military pay and his regular pay while he was on active duty and participating in mandatory training, SMB breached both the Active Duty Provision and the Training Provision. Id. The remaining claim is based on the EEO Policy, which Casey claims SMB breached by discriminating against him on the basis of his military service. Id. at 12. SMB moves to dismiss all three breach of contract claims, arguing that Casey fails to state a claim because the Manual did not create any contractual obligations. Doc. 8-1 at 4.

## II.  STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. On a motion to dismiss, I consider only the allegations in the complaint and any documents incorporated therein, including "the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint[.]" See Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000) (quoting Shaw v. Dig. Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996)).

4

In testing a complaint's sufficiency, I employ a two-step approach. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). First, I screen the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id. (cleaned up). A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be dismissed. Id. Second, I credit as true all of the plaintiff's non-conclusory factual allegations and the reasonable inferences drawn from those allegations, and then determine if the claim is plausible. Id. The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct. Twombly, 550 U.S. at 556. The "make-or-break standard" is that those allegations and inferences, "taken as true, must state a plausible, not a merely conceivable, case for relief." Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010).

### III.   ANALYSIS

SMB argues that all three contract claims must be dismissed because the Manual's acknowledgment form effectively disclaimed any contractual obligations, thereby preventing the creation of a contract. SMB further argues that the claim based on the EEO Policy must be dismissed because the EEO Policy is too vague to constitute a contract. Casey asserts that the acknowledgement form only indicates that the Manual does not alter the at-

5

will status of his employment, and therefore does not adequately disclaim the policies at issue here.

The New Hampshire Supreme Court has recognized that a company's policies may be constitute a unilateral contract if the standard elements of contract formation—offer, acceptance, and consideration—are satisfied. See Panto v. Moore Bus. Forms, Inc., 130 N.H. 730, 737 (1988). Thus, policies "may be treated as an offer subject to an employee's acceptance, to be expressed by the continued performance of his duties, upon which an enforceable unilateral contract term will be formed." Id. at 735.

Nonetheless, "[a]n employer who seeks to avoid creating an employment contract can do so via a written disclaimer in the handbook or policy that indicates that the document will not create contractual obligations." Balsamo v. Univ. Sys. of N.H., 2012 DNH 048, 2012 WL 683491, at *8 (D.N.H. Mar. 2, 2012). But a certain level of specificity is required in order for a disclaimer to preclude the creation of a contract based on explicit policies in the handbook. See Butler v. Walker Power, Inc., 137 N.H. 432, 436 (1993). A general disclaimer that merely "indicat[es] that a handbook is not a 'contract of employment'" will effectively disclaim "the employer's intent to create a tenured employment relationship," but not the concomitant incidents of employment contained in the handbook. See Riesgo v. Heidelberg Harris, Inc., 36 F. Supp.2d 53, 60 (D.N.H. 1997). "[T]o disclaim an intent to be bound

6

by policies included in a handbook that are not related to the fact or duration of employment, an employer must specifically state such an intent." Id. I apply these principles first to the Military Policy, and then to the EEO Policy.

**A.    Military Policy**

SMB argues that the acknowledgement form effectively precludes the creation of a contract based on the Military Policy by specifically disclaiming all contractual obligations related to "compensation." I agree.

Unlike the cases relied on by Casey, the acknowledgement form here does not merely disclaim the creation of a "contract of employment," but rather specifically disclaims "any contractual obligations related to . . . compensation." Doc. 8-1 at 10. In doing so, the acknowledgement form makes clear that the Manual's compensation policies cannot form the basis of a contract.

The New Hampshire Supreme Court has interpreted "compensation" in other contexts to refer to both salary and "any other benefits that are an integral part of the employee's contemplated compensation," including "annual leave, sick leave, insurance, retirement, [and] death benefits." See Jeannont v. N.H. Pers. Comm'n, 118 N.H. 597, 602 (1978); see also Cloutier v. State, 163 N.H. 445, 452 (2012); Gilman v. Cheshire Cty., 126 N.H. 445, 448-449 (1985). The Military Policy deals exclusively with leave benefits, and thus falls squarely within the meaning of "compensation."

7

Casey does not appear to dispute that the Military Policy deals with "compensation," but rather argues that the Policy creates contractual rights notwithstanding the disclaimer because "no New Hampshire court has specifically held that compensation terms may be disclaimed." Doc. 9 at 6. While this may be true, the New Hampshire Supreme Court has consistently stated that specific policies may be disclaimed without carving out any specific types of policies that may not be disclaimed. See Panto, 130 N.H. at 742 (noting that a company can avoid contract liability "by announcing in the written policy itself that it was not an offer, or a policy enforceable as a contractual obligation"); Butler, 137 N.H. at 436 (stating that a company can "avoid[] contractual liability by clearly stating its intent not to be contractually bound by the terms of the promulgated policy"); see also Balsamo, 2012 WL 683491 at *8 (noting that a policy may "create binding contractual obligations regarding the incidents of employment—such as compensation and fringe benefits—to the extent that the incidents themselves are not disclaimed") (emphasis added). Indeed, Casey has not cited a single decision from any court that holds that compensation terms may not be disclaimed, and I have located none. To the contrary, several courts have explicitly held that compensation terms may be disclaimed. See, e.g., Hall v. City of Plainview, 954 N.W.2d 254, 268 (Minn. 2021) ("well-drafted, specific, disclaimers can prevent the formation of contractual rights

8

stemming from employee handbook provisions, including provisions concerning [paid time off]"); City of Denton v. Rushing, 570 S.W.3d 708, 711-712 (Tex. 2019) (holding that a handbook disclaimer effectively precluded the creation of contractual rights based on a manual's pay schedule for time spent on-call); Furtula v. Univ. of Ky., 438 S.W.3d 303, 309-310 (Ky. 2014) (concluding that a disclaimer precluded any contractual obligations related to "long term disability and salary continuation programs"); Rudolph v. IBM Corp., No. 09 C 428, 2009 WL 2632195, at *3 (N.D. Ill. Aug. 21, 2009) ("Courts [in Illinois] have consistently held as a matter of law that a compensation plan does not create an enforceable contract if the language of the plan explicitly provides an employer the right to modify or terminate the plan at any time.").

While there may be policy reasons to impose such a limitation, the New Hampshire Supreme Court has not yet done so, and I decline to break new ground here. See Doe v. Tr. of Bos. Coll., 942 F.3d 527, 535 (1st Cir. 2019) ("A litigant who chooses federal court over state court cannot expect this court to blaze new and unprecedented jurisprudential trails as to state law. Rather, this court must take state law as it finds it: not as it might conceivably be, some day; nor even as it should be.") (cleaned up). Accordingly, because the acknowledgement form disclaims the creation of a contract based on the

9

Military Policy, the breach of contract claims based on that policy must be dismissed.[2]

**B.    EEO Policy**

SMB argues that the EEO Policy is effectively disclaimed by the acknowledgement form and, in any event, is too indefinite to form the basis of a contract. Although Casey argues that the acknowledgement form does not disclaim the EEO Policy with sufficient specificity, he does not address SMB's alternative argument. I conclude that the EEO Policy does not constitute an offer sufficient to create a contract, and therefore do not consider the impact of the disclaimer.

---

[2]    Casey also argues that he is entitled to the pay promised in the Military Policy, even though the acknowledgment form states that the Manual's policies are subject to change, because the Military Policy was in place at all relevant times. Doc. 9 at 6. I need not consider Casey's argument because my conclusion rests on the language in the disclaimer that disavows contractual obligations related to "compensation," and not the portion of the disclaimer reserving the right to alter the policies. That the policies were in place throughout Casey's military leave is irrelevant to his contract claims given that the acknowledgement form prevented the policies from creating a contract in the first instance. To the extent Casey is arguing that he is entitled to the pay provided in the Military Policy even in the absence of a contract, he has not advanced any such claim in his complaint. I express no opinion as to whether Casey is entitled to compensation under any of the other theories of liability hinted at in his objection, such as promissory estoppel, negligent misrepresentation, or the New Hampshire Wage Act, N.H. Rev. Stat. Ann. § 275:42 et seq.

As I explained, under New Hampshire law, an employer's policies only create a contract if they conform to the customary principles of contract formation. See Panto, 130 N.H. at 735; see also Brodeur v. Claremont Sch. Dist., 626 F. Supp.2d 195, 216 (D.N.H. 2009) ("New Hampshire does not take a 'liberal position' as to treating employee handbooks as contracts: when they satisfy the principles of contract formation, they are contracts, and when they do not, they are not."). Thus, before a policy can confer contractual rights, it must constitute an offer that the employee accepted through his continued employment. See Panto, 130 N.H. at 735. "An offer is the manifestation of willingness to enter into a bargain." IBM Corp. v. Khoury, 170 N.H. 492, 501 (2017) (quoting Restatement (Second) of Contracts § 24 (1981)). In order to form the basis of a contract, an "offer must be so definite as to its material terms or require such definite terms in the acceptance that the promises and performances to be rendered by each party are reasonably certain." Chasan v. Vill. Dist. of Eastman, 128 N.H. 807, 815 (1986) (quoting Restatement (First) of Contracts § 32 (1932)).

The EEO Policy fails to satisfy the basic requirements of contract formation for at least two reasons. First, the Policy cannot be understood as an offer because it only states SMB's intent to abide by state and federal law—something that SMB is already obligated to do. Thus, the statement cannot reasonably be understood as manifesting a willingness to enter into a

11

bargain about Casey's right to be free from unlawful discrimination, as this is plainly not a bargaining chip that SMB holds. See Tourtellotte v. Eli Lilly & Co., 636 F. App'x 831, 841 (3d Cir. 2016) (noting that anti-discrimination policies cannot form a contract because they do not indicate an intent "to create a legally binding obligation beyond the anti-discrimination laws already in place"); Byra-Grzegorczyk v. Bristol-Myers Squibb Co., 572 F. Supp.2d 233, 254 (D. Conn. 2008) ("The anti-discrimination policy does not indicate that [the defendant] is undertaking any contractual obligations towards [the plaintiff]; rather it obliges [the defendant] to comply with federal and state-antidiscrimination laws[.]") (cleaned up).

Second, the statement that SMB "does not tolerate discrimination or harassment" based on an employee's "protected status" is too indefinite to form the basis of a contract. See McKenzie v. Lunds, Inc., 63 F. Supp.2d 986, 1003 (D. Minn. 1999) (collecting cases and noting that anti-discrimination policies "are, as a matter of law, too indefinite to form an enforceable contract between an employer and its employee"). Because it is not clear what it means to "not tolerate discrimination," it would be nearly impossible to discern whether SMB breached the alleged contract. See Panto, 130 N.H. at 735 (finding that a policy could form the basis of a contract where the provisions were "sufficiently certain to allow claims of breach to be resolved readily"); Restatement (Second) of Contracts § 33 ("The terms of a contract

12

are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy."); accord 30 C.J.S. Employer—Employee § 31 (2023) ("The only binding statements of policy in an employment manual are those that promise specific treatment in specific situations.").

Relying on similar rationale, courts in other jurisdictions have rejected the argument that general anti-discrimination policies can form the basis of a contract. See, e.g., Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 309 (3d Cir. 2004); Elliot v. Montgomery Ward & Co., 967 F.2d 1258, 1263-1264 (8th Cir. 1992); Davis v. Oyster Bay-East, No. 03-cv-1372 (SJF) (JO), 2006 WL 657038, at *15 (E.D.N.Y. Mar. 9, 2006); Peralta v. Cendant Corp., 123 F. Supp.2d 65, 83-84 (D. Conn. 2000). Indeed, Casey does not cite to, and I have not located, any cases sustaining a breach of contract claim based on an anti-discrimination policy. Cf. Clayton v. Vanguard Car Rental U.S.A., Inc., 761 F. Supp.2d 1210, 1279 (D.N.M. 2010) ("The Court has found no case that has found an implied contract based solely on an anti-discrimination policy[.]"). Like the other courts to have considered the issue, I conclude that the EEO Policy here does not meet the basic requirements of contract formation, and therefore dismiss Casey's breach of contract claim based on the Policy.

## IV. CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss (Doc. 8) is granted.

SO ORDERED.

/s/ Paul J. Barbadoro  
Paul J. Barbadoro  
United States District Judge

May 16, 2023

cc: Counsel of record